The second case on our docket is 21-106001. My name is Jane Legler and I represent the plaintiff Brenda Drerup in regard to our action against consolidated nuclear security. The Pantex plant is a nuclear facility in Amarillo, Texas and CNS was contracted by the federal government to operate the facility, which has its own fire department. Brenda Drerup, age 56, was the sole female fire captain at the Pantex plant. As fire captain, Drerup worked in the compliance area with Battalion Chief Donovan Morgan and reported to Assistant Fire Chief Hoagland, who reported to Chief Mike Brock. From 2015 on, Drerup made multiple complaints of discrimination and retaliation to fire department management and the employee concerns department at the Pantex plant. After she was denied overtime and promotion to both Battalion Chief and Assistant Fire Chief positions. The district court dismissed Drerup's sex, age, disability, and retaliation claims on summary judgment and we assert that this dismissal improperly decided material issues of fact was legally erroneous. First, your honors, I would like to address the disability discrimination claim of Ms. Drerup. In 2014, Ms. Drerup, who had been previously diagnosed with allergic rhinitis, began developing severe migraine headaches and noticed black mold in her workplace at the fire department building. Further testing revealed serious mold issues in the building and after being examined by Pantex medical doctors, they gave her a medical restriction that prevented her from entering the fire department building and required her to move to a different building at the Pantex plant. And the reason that the Pantex medical personnel were examining her is because it's a nuclear facility, they have to examine all the firefighters for both mental health and physical health on a yearly basis. Under the ADA amendments in 2009, whether a condition substantially limits a major life activity is not supposed to be a demanding standard. A determination of whether a condition is substantially limiting is also fact intensive and involves credibility determinations that are not conducive to a determination on summary judgment. Therefore, the plaintiff's testimony alone, under the Williams v. Tarrant County decision in this court, is generally considered sufficient to create a material fact issue concerning disability. And here, Ms. Drerup submitted a declaration, medical records, and deposition testimony relating to the fact that she has a disability. Her medical records reflect over 13 doctor visits where she was consulting with her doctor about her condition. It includes evidence that she had coughing, headache, nasal congestion, eye infections, chest pain, thickening of her mucous membranes, and burning and hoarseness in her throat. And it also shows that her symptoms grew worse, accumulating in 2014 when the black mold was The evidence also showed that those migraine headaches caused her difficulty in concentration as well as in doing things, major life activities such as driving. We believe this evidence was sufficient to raise a fact issue that Ms. Drerup was impaired in terms of breathing and respiratory function. This impact is also shown by the fact that CNS's own medical personnel removed Drerup from the fire department and initially prohibited her from responding to fires at the plant. Later, they changed that to say that she could respond, but she needed to do so away from smoke and fire. That determination by their own medical personnel shows that she had difficulty breathing and constitutes substantial evidence that her allergic rhinitis and migraine headaches constituted a disability. In addition, we believe the district court improperly attempted to distinguish the Burnley v. City of Antonio case. In that particular case, also a firefighter case, the court found that allergic rhinitis was sufficient to constitute a disability under the ADA. That person also worked as a firefighter, and in that case, she had less symptoms than Ms. Drerup indicated. Ms. Drerup suffered more symptoms over more years than the plaintiff in the Burnley case. She had a permanent mold restriction issued by CNS medical personnel rather than just a temporary restriction, and her medical records reflect more symptoms than those asserted by Burnley, including the severe migraine headaches that were affecting her ability to concentrate and drive. In another case that we cited, Hebert v. Ascension, Paris, also said allergic rhinitis can constitute a condition that's substantially limiting in terms of being a disability. That person indicated they had difficulty breathing and fatigue and that it interfered with their ability to work, and the court found that this condition was disabling. The district court, in determining that Ms. Drerup had not presented evidence of a disability, also relied erroneously on pre-ADA amendments in 2009 to support its position. The only post-ADA case that they relied on, Butler v. Exxon Mobil, is clearly distinguishable, because in that case, the plaintiff only said they had allergies that were seasonal and sporadic, and opposed to here, where Drerup's medical records indicated her condition continued continually over many years. The district court also attempted to distinguish Spindle, or relied on Spindle v. CKJ trucking. Again, do not believe that case should impact this. In that case, the plaintiff only complained of shortness of breath and otherwise did not present evidence of their medical condition. Next, Your Honors, I wanted to address the issue of exhaustion of administrative remedies in regard to her battalion chief claim. The district court erred in determining that she failed to exhaust on this claim because it found that the EOC charge concerning the promotion issue was not filed until March of 2019. However, the district court said that the decision about the battalion chief position was actually made in May of 2016, and this is contrary to the record that was presented to the court. It's clear in the record of the court that it was first discussed that the position might be downgraded in 2016, but the record also reflects Ms. Drerup made numerous complaints throughout 2016 and 2017, both the fire department leadership and employee concerns regarding the potential downgrade, and it was not until November 2017 that the position was actually posted as a captain position and not until December 2017 that the change was officially made in the fire department records. The CFR regulations provide that the EEOC can accept any evidence a party submits in making a charge, and in this case the evidence indicated that on December 15, 2017, just about three weeks after the battalion chief position was posted as a fire captain, that Drerup faxed the EEOC investigator an internal employment concerns complaint that she had filed about the downgrade of the position in which she had said it was sex discriminatory and retaliatory. And so the EEOC clearly was put on notice within a timely matter to go ahead and investigate the issue of whether or not she had been discriminatorily denied the battalion chief position. Could I ask about the back to the ADA situation? Did you argue in the alternative that she was treated as if she had a disability because she wasn't given the responder duty instead of that she actually had a disability perceived by the employer? Is that part of the argument? Our original complaint, I believe, did say that she was both regarded as disabled and disabled, but the court didn't address the regarded as disability issue. Because if you're treated as such, even if you're not technically are disabled, then that can give rise. That's correct. Okay, but that's not, we're not dealing with that. Yeah, the district court just didn't address that question. And you didn't appeal that. We did not put that in the bill that we filed. Thank you. And additionally, in terms of the other issue about exhaustion that the district court had raised, we had alleged a failure to pay overtime to Ms. Dryup as a responder. And in that particular claim, it's our position that the district court erred in finding that there was, this was not preserved by the Lilly Ledbetter Act or the FPA. Under the FPA, a person has 300 days to file an equal pay claim with the EEOC. And if filed timely, then they can collect two years of back pay relating to that claim. And in regard to that, Ms. Dryup filed her intake questionnaire at the EEOC in May of 2017, indicating she was not being allowed to act as a responder and that a male employee was in March of 2017. So she clearly timely raised the issue of not getting paid as a responder in terms of overtime in a timely fashion within 60 days or so of when that occurred in 2017. But the district court basically just looked at the MTC strike, which occurred in 2015, and said she didn't file a charge within 300 days of that. But that ignores that she continued to want to work as a responder, and she continued to be denied work as a responder through 2017 and, in fact, throughout her entire tenure at the fire department. Additionally, as I'd like to address the prima facie case issue, the district court erred in determining that she could not establish a prima facie case regarding not being selected for the battalion chief position. First, the court said she couldn't establish that because the position was not filled because it was downgraded. I think this ignores this court's holding that a prima facie case is a minimal burden and that she can establish it by showing that she was not otherwise promoted to characteristics of her sex. And Dryup presented very substantial evidence that she was not selected due to her sex. Battalion Chief Morgan testified that he felt the position had been downgraded so Dryup would not be promoted and that her sex was a factor in the decision. He also recommended that she be promoted to that position. Assistant Chief Hoagland also testified that, effectively, Dryup was already performing the battalion chief position. Additionally, there was evidence that the fire department had budgeted to pay the position at battalion chief level and there's no record of a need to reduce expenses. And that evidence is sufficient to make a prima facie case that she sought the position and that sex was a factor in her not obtaining that position. The district court also determined that she didn't apply for the position once it was reclassified. And she didn't, Your Honor. But when it was reclassified, it was posted as a fire captain in compliance position. And that's the position she already held. So there would be no reason for her to apply for the same position that she already held. And the district court also said she did not, they did not post the battalion chief position and she didn't apply for that either. And so she couldn't prevail on that claim. And, again, I think that's a wrong assertion of the law because the law just requires that she seek the position. And the record is replete with evidence that she sought the battalion chief position. She had many, many meetings with employee concerns and fire department leadership about seeking that position. And that should be sufficient to establish a prima facie case. In regard to the failure to promote her to assistant fire chief, in 2019, Joyepp applied for the assistant fire chief position and a male outside the department, Emery Johnson, was hired for the job. The district court erred in holding that Joyepp was not qualified for this position. And they did so on the fact that she could not enter the fire department building. We presented evidence in the record that employee concerns manager McLaurin admitted that she was qualified to be assistant fire chief. Assistant fire chief Hoagland testified that he felt Joyepp should receive his position when he was retired. So he obviously thought she was qualified. We further presented evidence that entering the fire department building itself is not a necessary component of being assistant fire chief. Johnson, who was hired, could not enter the fire department building for over six months without an escort because he lacked necessary clearances to go in the facility. And he also said it was not necessary to be in the fire department to effectively perform the position. The district court, we think, erred in saying that she was not qualified. Ms. Joyepp had all the qualifications in the job description other than two certifications. And we presented evidence that Mr. Johnson, who was hired, also did not have those certifications until after he started working at the plant and that the fire department generally gives people a chance to obtain certifications if they don't have the necessary certifications at the time they were hired. So we believe those facts all support that she had a claim, a viable claim, relating to the assistant fire chief position. And then briefly, Your Honor, in regard to the retaliation claim, in regard to that particular claim, the court ignored temporal proximity between Ms. Joyepp's complaints and the actions that were taken against her. As the court knows, a plaintiff just needs to make a good faith complaint and allege a causal connection between the complaint and the adverse action. And in this particular case, we have evidence that in terms of the battalion chief position, that Ms. Joyepp filed the EEOC charge about a month before that position was posted as a captain position. So there was substantial temporal proximity there. Additionally, in regard to the assistant fire chief position, Ms. Joyepp filed a charge of discrimination in March of 2019, and she was not given an interview just three months later in June of 19. And we believe these show that, in fact, there was temporal proximity. Thank you. May it please the court. Judge Elrond, in the first argument, used the expression, where there's smoke, there's fire. Well, where there's fire, there's smoke, which is one of the fundamental problems with the appellant's case today. The appellant demands the rank and pay associated with responding to fires and commanding people who respond to fires, but says she cannot be around smoke, cannot be near fire, and cannot set foot in the fire station. And to accomplish this goal, Captain Drerup, and her name is pronounced Drerup, by the way. She's from the panhandle like I am, and they pronounce things their own way up there, even though the name doesn't look like Drerup. She asked this court to reinstate her claims for a failure to promote for jobs that she didn't apply to, wasn't qualified for, and, in one case, for a job that doesn't even exist any longer. I'm going to proceed. Was there black mold in the fire station? There was mold in the fire station, which was remediated to the same levels as was present outdoor. Ms. Drerup continued after the remediation to be uncomfortable with the levels of mold, and there were 60 other firefighters present in the fire station that weren't having the issues that Ms. Drerup expressed. And to Your Honor's point, she was allowed to work in another area, and she received a medical restriction, and I'll get to disability in a moment. Probably the strongest argument she had a disability would be that she was acknowledged to have one, but that issue is waived on appeal, and in a moment I'll get to that. She just couldn't otherwise qualify for a disability if not achieving one through the— But they treated her as if she had a disability by keeping her off of the normal job duties. No, Your Honor. I would say they treated her as they agreed to her request that she be outside of the fire station, which is something that came from medical. Right, but she wanted to go on calls, first responder calls that were not fire-related, and there are a lot of those from fire departments, people having heart attacks, and just a fair amount of first responder calls, not fires. That's correct. And she wanted to go on those, and she wasn't allowed by the company. Isn't that correct, because they perceived her to have a disability? There are a series of reasons why she wasn't allowed to go on responder calls. So there's the issue that she says she cannot be around smoke or fire, but on top of that issue, the fact that she couldn't enter the fire station, which is where those responses are staged and where those responses start, whether it's a fire response or not in the typical situation. In addition to that, for three of the relevant years, Ms. Drurup, Captain Drurup, had not passed what's called the combat challenge, which is the physical fitness test that is required in order to do any kind of response, whether it's responding to a fire alarm or an actual fire. Right, but then they cleaned it out because she couldn't take it because it was in the place that was the respiratory problem. They had it staged there, and then they cleaned it out, and she passed the second time. She passed the second time. That's what I said, the second time. Isn't that right? Yes, Your Honor. So she had passed that. That's right, although, as is indicated by the record, the facility where they're testing is outdoor, and she felt like bird droppings, things that are present outdoor, made the facility too dirty for her to take the test. That's, of course, problematic because when responding to any sort of situation, you can't guarantee that the area will be clean. To the extent that she alleges that there was lingering prejudice against her because of the reported sexual assault and the firing of the person who assaulted her multiple times, can that be considered? No, Your Honor, and I think that Appellate makes it clear in her reply that that's just background information. The temporal proximity between the allegations from 2008 and employment decisions that were made in 2016, 2017, and 2018 is just too great. I think Appellate realizes that and provides that information as she referred to it as background, not as something that she believes is a causal connection to employment activities occurring eight to ten years later. Quickly with regard to administrative remedies, Your Honors, at the record at 1743 and 1764, you will see the actual EEOC questionnaire and charge, and a review of those charges makes it quite clear. These were about one specific event where Captain Drerup was alleging she had been discriminated against. Just from the record, to provide additional context, what occurred here, we refer to it as a grass fire incident. There was a grass fire. An individual named Captain Robinson, who was injured and not currently qualified to respond, was at the scene to gather information. A firefighter was injured during the response, and at one point he was mistakenly told to join the response. After that occurred, Captain Drerup filed a complaint saying that she should have been allowed to respond if he was allowed to respond. The company admitted that they made a mistake. They said this wasn't discrimination, but she was treated inconsistently, and they offered her the same amount of overtime worked by Captain Robinson. She declined to work the overtime. That was the incident that Captain Drerup was complaining about, and there's no dispute in the record that that's what actually occurred. That was the basis of her EEOC charge and her EEOC questionnaire. One cannot say that arguments like the court has heard today about elimination of positions and failure to promote to positions are like or related to those charges or the questionnaire. The charge was about one specific event and simply wasn't that broad. There was additional language about ongoing. This is part of ongoing harassment. That language is too broad and too vague to meet this court's standard for an EEOC charge or an EEOC questionnaire. There simply have to be allegations where you could reasonably expect these other allegations to grow out of them, and that's just not present. There is an argument that the 2019 charge that was prepared by counsel related back to the 2017 charge. But under the Manning v. Chevron case, this court explained in 2003 that really you can't expand the scope of the first charge. The purpose of the relation back doctrine is to cure technical defects and omissions, gaps or mistakes. It's not to allege all new theories, all new causes of action, which is precisely what happened in 2019. For those reasons, Appellate failed to exhaust her administrative remedies, both with regard to the battalion chief elimination claim and with regard to the 2015 strike overtime argument. With regard to disability, Plaintiff Appellate asserts now that her disability is chronic allergic rhinitis. The disability pled at the trial court level was never chronic allergic rhinitis. That didn't arise until summary judgment briefing. Drerup only pled headaches and mold sensitivity. And, of course, there was no mention of chronic allergic rhinitis in the EEOC questionnaire or in the EEOC charge. In fact, on both of those documents, Captain Drerup indicated she did not have a disability at all. So what is chronic allergic rhinitis? It is commonly referred to as hay fever. It is allergies and it can mean any variety of things in terms of severity. And that's why there isn't a per se rule that chronic allergic rhinitis is a disability or isn't a disability. In fact, most of the cases in the circuit that have looked at the issue have decided under the fact inquiry in those cases that that person's chronic allergic rhinitis was not a disability under the ADA. For example, the Perez case for the Western District in 2009, the Butler case for the Middle District of Louisiana in 2012, the Miles Hickman case for the Southern District of Texas in 2008, all found that allergic rhinitis in those cases didn't meet the ADA definition of a disability. The plaintiff appellate relies on the Burnley v. City of San Antonio case and claims that the symptoms of appellant are worse than the symptoms of the plaintiff in the Burnley case. A review of that case will show you that in fact the Burnley plaintiff had a botched surgery which resulted in mold growing in the nasal cavity of the plaintiff, that the plaintiff had impaired breathing, had permanent lung damage, and was in a markedly different situation. The Burnley court relies on the idea that there is substantially limited breathing, or at least evidence of substantially limited breathing in the Burnley case. And that's ultimately what appellant would need to establish here. So let's look at what the record says about plaintiff's breathing. Specifically, the record at page 637 is very instructive on this point. In the question asked on 637, your symptoms from chronic rhinitis or mold sensitivity, have they limited your ability to breathe? And the answer was, sometimes I have some shortness of breath that I've been experiencing. And then it goes on to talk about the building she's in. That lays it out quite clearly. Layer that on top of the record from pages 1798 to 1809, which is the actual medical records of appellant, which go in great detail about her ability to breathe. As they say, things like easy respiratory effort at 1810, normal breathing at 1808, normal breathing, again, at 1806, normal breathing at 1804. Although appellant's briefing refers to these medical records to create the impression that there were breathing problems, the records themselves actually say quite the opposite. The question posed here, like in Salcedo v. Harris County in the Southern District in 2018, is not whether a condition in and of itself is a disability. It's a question about whether this specific instance results in a disability. And in this case, under the existing case law, where there is no substantial limit to breathing, as completely borne out by the documentary evidence, only disputed by conclusory affidavit testimony from the plaintiff, that there can be no question about a limitation of breathing. And the breathing has to be severe and long-term, as the Brackens v. Dallas Independent School District case said in 2010. So a handful of instances of difficult breathing aren't enough to have a disability under the Act. The hay fever, the next question, which this appears to be abandoned by appellant, the idea that this limited her ability to work, I think appellant has conceded that it prevented her from holding only a narrow range of jobs, which doesn't create a disability under the Act. But we fully briefed the issue. And specifically under Bridges v. City of Bossier, this court said in 1996, just because you can't be a firefighter doesn't mean you're disabled. And that was the situation here. Could you address exhaustion of remedies for the Fair Pay Act, the back pay claims? Yes, yes, Your Honor. More specifically? Yes, Your Honor. And why the Lilly Ledbatter Act doesn't help her overcome her exhaustion issues for 2015 and 17? Yes, Your Honor. That is a very specific kind of cause of action. So it is about receiving unequal pay for similar work. That is not the allegation. The allegation here is that a firefighter was allowed to respond when she wasn't being allowed to respond. She was offered overtime. Had she chosen to work that overtime, and had she been paid a different amount than Captain Robinson for that work, she could have asserted, I think, a very valid FPA claim. But there is no claim like that, and there is no mention of any claim like that in the charge of the questionnaire. It's simply this person was allowed to work. I wasn't allowed to work. It's not an FPA claim, Your Honor. But there's not a good reason that she wasn't allowed to work, though, is her position. Yes. It's because of her sex and maybe her age. It's unclear, but because of her sex mostly that she's not being allowed to work. And it was undisputed that Captain Robinson wasn't allowed to work either. It was a mistake in an emergency situation. But this was an ongoing thing for long periods of time where all the HR people would say she needs to be able to, and then the boss wouldn't assign her this position, even though according to the pleading. I'm not saying that's the true facts. Right. So why isn't that exactly a discrimination because she's not being allowed to do her exact job duty that would allow her to get paid? I agree with Your Honor that that is what the pleadings say. What the record says is that from 2015 to 2018, Captain Andrera had not passed the combat challenge and was not eligible to participate in any sort of response activities. And then past that point, and I'll go ahead and address this now, she makes several arguments about overtime and overtime lost as a result of not being able to handle responder duties. The appropriate test for that, as pointed out by the district court, are the comparators, the individuals who she said were getting the overtime, similarly situated to Captain Andrera. And the district court correctly applied the test that they need to be nearly identical in order to be valid comparators under the test. And it is, as the appellate points out, a very high bar. And here are the four ways in which none of those, not all of those comparators were nearly identical. Is our case law really nearly identical or is it substantially similar? Is the case law in this circuit actually nearly identical? Yes, it is. And this court in Saatchi v. Optive Security affirmed that standard, this circuit in 2020, that the similarly situated employees in this inquiry need to be nearly identical comparators. Now, of course, that doesn't mean nearly identical in material respects. It doesn't matter how tall they are or the color of their hair. But with regard to the material respects that could result in the decisions, they do need to be nearly identical under the law. And in this case, there was a wide divergence between the comparators. And there's really four major issues that distinguish Captain Drerup for her comparators. One, that she says she cannot be around smoke. Two, that she—or unclean environments. As Your Honor points out, there are non-fire responses. But there's certainly no guarantee when you're responding to an alarm or a medical emergency that she won't be asked to go into an unclean area. They can only respond to fires from a— Captain Drerup could only respond to fires from a staging area, which is not something someone of her rank would typically do. She failed to pass the combat challenge for three years, and she could not enter the fire station, which is where these responses are staged from. There is no comparator that has any more than one of those four elements in common with Captain Drerup. And therefore, there is no one who's identical, and really not anyone who's similar, with the closest example being Vance Robinson, the individual who one time responded accidentally in an emergency. That's really the closest comparator to Ms. Drerup that's analyzed. Okay. Can you also address the issue with the prestigious role and the swapping the fire captain duties? Yes, Your Honor. And this is what's referred to in our briefing as the swapping of duties or the Josh Brown duties. Appellant makes the argument that she was discriminated against for not receiving the duties of a captain named Josh Brown. The record is clear on several points, however. The position for Josh that was ultimately filled by Josh Brown was posted in November, wasn't filled until February. Appellant never applied for the position. In the record, it states she was aware that the position existed. But as counsel stated, why would she apply for it? Which makes perfect sense. Why would she? Because it was simply a lateral transfer, which is the point that appellants make. She then requested after the fact, after Mr. Brown had been given the job, that they have their duties swapped, that she do her duties and he do hers. There is no cause of action for that based on the elements for failure to promote. You need to apply for a job, and someone outside of the protected class needs to. I thought it was a we are equals, and this person gets to do better jobs. And it used to be that that wasn't a tangible job detriment or whatever, that that wouldn't count. But now the Supreme Court has told us that that sort of perks in the job can be enough to be actionable. So why isn't it at that point you measure it, not whether she applied for that transfer to be swapped, but that he's getting better duties that enable him to get better opportunities, and she's not ever getting those conferences and education and other kinds of things. Certainly, and the standard has been relaxed 15 years ago. That's right, a long time ago. We wouldn't have to talk about this, but now we do. And there is purely subjective, conclusory arguments about why this is superior and why this is better. That's what the entire appellant's argument is based on. And if you look at the objective, and it needs to be... It is. I mean, getting to have further training, education, could be considered a better part of a job, a benefit that she's not getting. It could. It also, like for me, I consider it a downside that I have to travel. There is no evidence in the record about why that's a positive thing or why that's a negative thing, additional travel. There is also evidence in the record that Captain Jareb was given multiple opportunities for travel, which she declined in her position. And I think that that, though, doesn't relieve them from their burden to have a prima facie case. They need to show they applied. Appellant needs to show she applied for the position. She doesn't have to apply for that position if that position is already equal. They're the same position, aren't they? They're technically the same job. And she's just saying the person that does that job, person A gets a better same job. They're equals, but they're not. So she doesn't need to apply for that job because she already has that job. Well, it's the same job title, but it's different job duties. She would need to apply for it, just like Josh Brown needed to apply for it, because the elements of a... She's making a failure to promote case. I thought this was separate and apart from promotion. She's saying that they were in the job and he got better treatment even though they had the same title. No, that isn't it. It's not a separate pull-out complaint. No, it is not. It's based on what we believe is fiction, that it was a superior position. And therefore, even though the titles were the same, it was a promotion. It's a failure to promote claim. And therefore, she has to meet the prima facie elements of a failure to promote claim, and she can't because she didn't apply for the job. There's no cause of action for... We'll all have to ask the post-counsel if that's... Yes, Your Honour, and I see that I'm out of time unless you have further questions. Thank you. Your Honour, would you like me to start up on that issue about the duties given, Mr. Brown being objectively better? I can address that since Mr. Kardashian did.  Were you making a failure to promote claim? Pardon? Were you making a failure to promote claim, and did your client apply for the promotion? The failure to promote claim relates to the battalion chief position that was downgraded. The failure to promote claim doesn't relate to the position that Mr. Brown got. The argument on that position is that they were in similar roles, but he was getting an allocation of better job duties than her. And under the Alvarado v. Texas Ranger case, it has said that materially adverse actions can be shown if other job duties are more interesting, involve more responsibility, have more room for advancement, etc. What do you say to his argument that it's actually a different job entirely with different job duties, and that's why it may sound more interesting to some? No, I think what we did is present evidence that it wasn't just the subjective belief of Ms. Drayop that the job duties were better. We presented evidence that Mr. Hoagland developed a plan for Ms. Drayop to take over matrices, fire department accreditation and oversight, duties which were eventually given to Brown, and he stated that that was so that she could widen horizons and provide her more opportunity to move up. So that is an admission that basically those duties are more likely to lead to advancement than the document processing duties she was doing. Right, but did she need to apply for those duties? Did she need to apply for job A that had those duties because it was different than job B that she had? I think what the record reflects, Your Honor, is no, because what happened is once there became another fire captain, there was an allocation made of all compliance duties. And our assertion is they were just allocating all the good job duties to Mr. Brown and giving her the lesser duties. And we have evidence in the record that Mr. Hoagland said she could be team lead. Again, this is obviously a more objectively prestigious position than just doing document processing, but Chief Brock wouldn't allow it. We also had Fire Captain Hale's testimony that Brown got the HSO duties, which involved more travel opportunities, more supervisory authority. In fact, he had supervisory authority over DRAMP in regard to HSO duties. And so I think those show that there was objective evidence in the record that the allocation of the job duties was discriminatory. And I do want to, with some time remaining, address a little bit on the combat challenge and the responder duties. In regard to that particular issue, the Pantex Medical Department released Ms. DRAMP to go back to responder duties as of March 2015. And it also shows that in January 2015, she asked Fire Department leadership, how do I go back to being a responder? And she just got stymied and stymied and stymied. And again, in August of 2016, after she went to employee concerns, they said, hey, you can take the combat challenge if the facility gets cleaned out. But again, Chief Brock just wouldn't clean out the facility. So another year went by, and it gets to be the end of 2017, and the medical department is saying, why isn't this person responding? She's eligible to respond. And again, there are more complaints by Ms. DRAMP, and eventually they say, well, take a fire hose and we'll clean out the facility so that she can take the combat challenge. And she did. Did she refuse to take the challenge because of the condition of the facility? She was told she could not by medical until the facility was cleaned out based on her medical condition. She never refused. She passed that combat challenge every single year she was in the department until she got moved out of the fire department building. And Mr. Brock wouldn't do anything to clean the building so that she could take the combat challenge. And I think it's important to note that... Is there any evidence in the record that she said, hey, I want to go ahead and take it now. It's not a long time I have to spend in that building, and then I'll be okay. There's evidence in the record of complaints she made to employee concerns in which she indicated she wanted to go ahead and take that combat challenge. And she did finally pass it in 2019, and I think it's indicative that after she passed it in 2019, Chief Brock still didn't let her respond. So I think to say that the chief... or that the main reason she wasn't allowed to respond was she didn't pass that is not indicated by the facts in the record. She was never allowed to respond, and she could have. Is it a position that the combat challenge requirement itself is discriminatory, or you believe it's an objective requirement? No, I don't believe it's sex discriminatory to have the combat challenge. I think that's an okay requirement, but I think they had a duty to go ahead since they had medically restricted her to ensure that she could take it and be eligible for the responder duties, and clearly they refused to do that. So I see no time for that. Thank you, Your Honors. Thank you. Thank you. Thank you.  Thank you.